**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DEBORAH D.                                             :
                                                      :
    v.                                                :
                                                      :    NO. 25-CV-5556
FRANK BISIGNANO,                                      :
Commissioner of Social Security                       :
                                                      :

**O P I N I O N**

SCOTT W. REID                                    DATE:  May 19, 2026
UNITED STATES MAGISTRATE JUDGE

Deborah D. has brought this action under 42 U.S.C. §405(g) to obtain review of the

decision of the Commissioner of Social Security denying her claim for Disability Insurance

Benefits ("DIB").  She has filed a Request for Review to which the Commissioner has

responded.  As explained below, I conclude that the Request for Review should be denied and

judgment granted in favor of the defendant.

I.        *Factual and Procedural Background*

Deborah D. was born on April 25, 1959.  Record at 257.  She completed high school.

Record at 304.  She worked in the past as an administrative assistant, and as a financial manager

at her church.  *Id*.  On October 22, 2021, Deborah D. filed an application for DIB, alleging

disability as of August 5, 2021, on the basis of arthritis in her cervical spine, degenerative disc

disease, status post-spinal fusion at L4, L5 and SI, chronic headaches, and gastrointestinal issues

including chronic diarrhea.  Record at 257, 303.

Deborah D.'s application was denied on January 31, 2022.  Record at 100.  It was denied again upon reconsideration, on July 28, 2022.  Record at 118.  Deborah D. then sought review *de novo* before an Administrative Law Judge ("ALJ").  Transcript at 137.

A hearing before an ALJ was held on April 18, 2023, but a decision was not issued.  Record at 74.  A new hearing was therefore held before a different ALJ on June 3, 2024.  Record at 40.  On August 17, 2024, however, the ALJ issued a written decision denying benefits.  Record at 20.  On July 28, 2025, the Appeals Council denied Deborah D.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security.  Record at 1.  Deborah D. then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration

requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's

residual functional capacity ("RFC") based on all the relevant medical and other evidence in the

case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any

limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Deborah D. suffered from the severe

impairments of lumbar spine degenerative disc disease status-post fusion and revision of fusion;

right hip osteoarthritis status-post arthroscopy; obesity; gastrointestinal issues status-post

hysterectomy and radiation for cervical carcinoma; and degenerative disease of the cervical

spine.  Record at 22.  She decided, however, that no impairment and no combination of

impairments met or medically equaled a listed impairment.  Record at 24.

The ALJ found that Deborah D. retained the RFC to engage in sedentary work with the

following limitations:

3

[O]ccasional climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing and stooping; never kneeling, crouching or crawling; frequent reaching bilaterally and occasional overhead reaching bilaterally; occasional pushing and pulling a maximum of 5 pounds with the upper and lower extremities; no work with vibrations; occasional use of foot controls; the avoidance of more than moderate exposure to heat, cold, and humidity; the claimant must alternate between sitting and standing by standing for 5 minutes after every 45 minutes of sitting while remaining on task; the claimant requires access to a restroom within close proximity to the work station; and the claimant requires use of a cane for ambulation.

Record at 26.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded that Deborah D. could return to her past relevant work as an administrative clerk. Record at 31. She decided, therefore, that Deborah D. was not disabled. Record at 32.

In her Request for Review, Deborah D. raises the following issues: (1) the ALJ erred in finding her mental health impairments, and other impairments, not to be severe; (2) the ALJ erred in failing to credit in full the opinions of the agency reviewing medical experts and treating practitioners Jennifer Van Blargan, CRNP, and Susan Shook, CRNP; (3) the ALJ's finding that Deborah D. can engage in sedentary work is not supported by substantial evidence.

IV.    *Discussion*

    A.    *Impairments Found Non-Severe*

Deborah D. argues that the ALJ should have found her mental health conditions to be severe. She adds: "Additional conditions that ALJ [*sic*] failed to properly consider were diabetic retinopathy, hypothyroidism, pulmonary nodule, restless leg syndrome and insomnia as well as breast issues ongoing, which eventually lead [*sic*] to her being diagnosed with cancer (recent diagnosis), and a double mastectomy." *Request for Review* at 11.

As to Deborah D.'s mental health, the ALJ found that she had only mild limitations in concentrating persisting or maintaining pace, and no limitations in the other so-called "paragraph

B" criteria which are used in the regulations to evaluate mental disorders.  Record at 23-4; 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ wrote:  "The claimant's medically determinable impairments of generalized anxiety disorder and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  Record at 23.

Deborah D. has not cited any evidence in the record pertaining to her mental impairments.  She mentions "the anxiety/depressions [*sic*] in her chart" and "ER visits," but does not provide any reference to an exhibit number or page number.  It is possible to locate a few mentions of medicine prescribed for anxiety and depression within the 2023-page medical record.  *See*, *e.g.*, Record at 2377.  Also, the Commissioner has identified one emergency room visit on July 16, 2021, where Deborah D. complained of chest pain.  473.  However, Deborah D. was not diagnosed with any disorder at that visit.  Record at 476 ("etiology uncertain").  She was noted to have a normal mood and affect.  Record at 475.

In any event, the record does not include any treatment notes or reports from any mental health professional.  Nor did Deborah D. undergo an examination by a consulting mental health specialist.  As the ALJ observed, Deborah D. had a few mental status examinations incidental to treatment for physical impairments, which were entirely normal.  Record at 2347 (January 12, 2023), 2379 (October 24, 2023).  On October 24, 2023, Deborah D. responded "not at all" when asked how often she felt "down, depressed, or hopeless."  Record at 2378.  Deborah D. did not mention mental health symptoms or treatment at her hearing, other than stating that she was anxious when leaving her house because of her fecal incontinence.  Record at 63.  As mentioned above, Deborah D. did not initially claim any mental health impairment in her application for benefits.  Record at 257, 303.  She has not, therefore, shown the existence of severe impairments.

As to the other impairments Deborah D. mentions, she provides neither citations nor argument, but only the single sentence quoted above. Most puzzling is the reference to "cancer (recent diagnosis)" and a double mastectomy. The record contains no pertinent medical records. Even Deborah D.'s former counsel did not mention breast cancer in his brief to the Appeals Council, dated December 7, 2024. Presumably, the Commissioner is correct in calling this a "post-decision" diagnosis, although it is impossible to be sure. *Response* at 5. Obviously, even such a serious condition as breast cancer could not have affected Deborah D.'s ability to work by the time of the ALJ's decision if it had not yet arisen.

The burden of proving disability is on the claimant. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 174 (3d Cir. 2015) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a)). Here, where Deborah D. has provided no citation to relevant evidence, and scant argument, it is impossible to say that she has demonstrated error on the part of the ALJ

B. *Nurse Practitioners Van Blargan and Shook*

Deborah D. argues that the ALJ's assessments of the medical opinions from treating medical practitioners Jennifer Van Blargan, CRNP, and Susan Shook, CRNP, were not supported by substantial evidence. N.P. Van Blargan treated Deborah D. at Penn State Medical Group Family Medicine. In a letter report dated May 12, 2022, she wrote that Deborah D. could not sit, stand, or walk for more than 15 minutes at a time without "pain being excruciating." Record at 1025. She could not sit at a computer for more than 20 minutes at a time because of her cervical spinal degeneration, which also caused constant headaches. *Id*. Because of her diarrhea, she had "only seconds" to get to the bathroom when feeling an urge, and experienced high anxiety. *Id*.

6

The ALJ wrote:

> The undersigned considered the opinion of Jennifer Van Blargan, CRNP. The undersigned does not find the opinion persuasive. For example, the opinion discusses fecal incontinence and the need for frequent bathroom breaks. This is not consistent with the evidence of record. The claimant alleges GI issues status-post radiation for cervical cancer. However, the claimant worked for over 20 years in office jobs following her cervical cancer treatment (realty and at a church). The fact that these symptoms did not prevent work then suggests they would not prevent work now. Likewise, anorectal manometry revealed findings consistent with some visceral hypersensitivity; however, findings were otherwise largely normal including normal internal and sphincter pressure. The opinion is also not consistent with imaging of the claimant's cervical spine. In 2020, imaging showed mild to moderate facet degeneration in the cervical spine. There has been no updated imaging of the cervical spine. Lastly, the opinion is not consistent with Ms. Van Blargan's limited physical examination findings. The only abnormalities she notes are antalgic gait and difficulty changing positions.

Record at 29. (Internal citations omitted).

The ALJ's analysis of N.P. Van Blargan's letter is not perfect. There is no apparent medical source for her assumption that visceral hypersensitivity is less likely to cause chronic diarrhea than internal and sphincter pressure, and it is hardly common knowledge. Record at 2242. The ALJ's description of N.P. Van Blargan's physical examination findings is also misleading. In fact, N.P. Van Blargan wrote:

> 63 y/o female who appears very uncomfortable due to back pain. No cauda equina [nerve damage] symptoms, but has had recent change in bowel habits, which is multifactorial. Very difficult for her to change positions, e.g., sitting to standing due to pain. Antalgic gait.

Record at 1029. So, the "only" abnormality is arguably disabling pain.

Nevertheless, it is true that Deborah D. underwent cancer treatment between 1999-2000, according to Christine Fahr, N.P., the consultative examining medical expert. Record at 1035. The perforation of her colon occurred in 2017. *Id*. Yet Deborah D. worked until 2021. Record at 257. The ALJ's observation that "the fact that these symptoms did not prevent work then suggests they would not prevent work now," is therefore well-taken.

Further, N.P. Van Blargan's opinion that it was "very difficult" for Deborah D. to change positions is explicitly opposed by N.P. Fahr's report, dated ten days later on May 23, 2022, where she observed: "Needs no help getting on and off exam table.  Able to rise from chair without difficulty."  Record at 1036.[1]

Susan Shook, C.R.N.P., of Penn State Health Medical Center Gastroenterology also wrote a letter to support Deborah D.'s application, dated March 13, 2023.  It states, in the most relevant part:

> Deborah [D.] is a 63-old female who has been unable to do her job physically for quite some time because of surgeries as well as her chronic diarrhea.  She has episodes of sudden unexpected diarrhea which she is unable to hold and must be able to get to the restroom immediately.  This is not a good scenario for being in a workplace.  The reason for this problem is likely trace [*sic*] to radiation therapy that she had several years ago.  At this point there is no cure for this uncontrollable diarrhea and it has been affecting her quality of life for quite some time.

Record at 1784.  Here, again, however, the ALJ pointed out that the "several years" since Deborah D.'s cancer treatment was actually more than 20 years, during most of which time she was employed in office jobs, including four years since the 2017 perforation to her colon:  "The fact that these symptoms did not prevent work then suggests they would not prevent work now." Record at 30.

It is important to recognize that the ALJ credited in large part the existence of Deborah D.'s chronic diarrhea.  Her RFC assessment includes the need for close proximity to a restroom. Record at 26.  Nor did she ignore Deborah D.'s orthopedic surgeries and spinal abnormalities. She limited Deborah D. to only a modified range of sedentary work.

---

[1] Also interesting is a hand-written letter from Deborah D. to N.P. Van Blargan's office which begins:  "I see a physical dr. next Monday, May 23rd.  I need a very persuasive letter from you on this disability decision," and goes on to dictate all the points mentioned by N.P. Van Blargan in her opinion letter, such as "Important to accent on the arthritis in my neck that limits my ability to sit at a computer any longer than 20 min. at a time," and "Generally: unable to sit, walk, stand at any length of time (over 15 minutes)."  Record at 1881.  Although the ALJ did not mention this letter, it tends to undermine the value of N.P. Van Blargan's submission as an objective medical opinion.

Nevertheless, Deborah D.'s brief recapitulation of the opinions provided by N.P. Van Blargan and N.P. Shook does not show that she was entitled to any further limitations. On the contrary, the ALJ's conclusions in this regard were supported by substantial evidence in the form of N.P. Fahr's report, and Deborah D.'s medical history and physical examinations.

C.    *The RFC Assessment*

Some aspects of Deborah D.'s third argument, that she "does not have an RFC for work at any exertional level," have already been considered in connection with her other claims. This includes the ALJ's treatment of the opinions from N.P. Van Blargan[2], and the unelaborated claim that "Additional conditions that ALJ [*sic*] failed to properly consider were diabetic retinopathy, hypothyroidism, pulmonary nodule, restless leg syndrome and insomnia as well as breast cancer (recent diagnosis), anxiety and depression." *Request for Review* at 10.

What remains is a lengthy quotation from a letter signed by Jeffrey R. Conly, M.D., of Orthopedic Associates of Lancaster, Ltd., dated February 13, 2025. Record at 8. However, Deborah D. does not explain where this Court would derive authority to review Dr. Conly's letter. This Court is limited to reviewing the decision of the ALJ – which stands as the final decision of the Commissioner – for substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). Obviously, the ALJ was not able to consider Dr. Conly's letter, which was written months after the ALJ issued her decision, and submitted for the first time to the Appeals Council.

---

[2] Deborah D. also provides what appears to be a quote from a 2021 letter from N.P. Van Blargan, but her citation to the quote is indecipherable, and the letter could not be located in the record. In any event, Deborah D. describes the letter as "paraphrased," so there is no way to determine what N.P. Van Blargan may actually have said. *Response* at 9, citing "paraphrased R. 899, page 3."

The Appeals Council refused to consider Dr. Conly's letter on the basis that it did not relate to the period under consideration by the ALJ, which ended on the date of her August 17, 2024, decision. Record at 2.

Deborah D. also cites her own testimony, where she described herself as inactive and in constant pain, and explained that her husband (who she married in October of 2022) performed most household chores. Record at 65-67. However, the ALJ concluded that Deborah D.'s testimony was not entirely consistent with the medical and other evidence of record. Record at 31. At the time of Deborah D.'s May 23, 2022, examination by consulting medical expert, N.P. Fahr, she was not yet married, and lived alone. Record at 1036. She told N.P. Fahr that she was able to drive, and that she cooked seven days per week. *Id*. Although she was not able to clean the house, she shopped once or twice per week, and did the laundry. *Id*.

Further, on December 20, 2021, Deborah D. sought medical care for rashes on her arms she developed while snorkeling in Roatan in November, 2021. Record at 747. The ALJ wrote: "While travel and disability are not mutually exclusive, the claimant's ability to travel recreationally indicates that the claimant's abilities have, at least at times, been somewhat greater than the claimant has generally reported." Record at 31.

Undoubtedly, during the relevant period, Deborah D. was afflicted by many serious impairments, some of which resulted in (or were caused by) significant surgeries, including a hysterectomy, a hip replacement, and spinal fusion. Record at 22, 1035. However, the ALJ recognized this, issuing a very limited RFC for less than the full range of sedentary work. The ALJ's assessment was considerably more restrictive than those issued by the agency reviewing physicians, both of whom concluded that Deborah D. could engage in a range of light work.

Record at 103-104 (Roman Oleh Bilynsky, M.D., initially); 113-114 (Ruth Myers Arnold, D.O., upon reconsideration).

Deborah D. has not successfully challenged the ALJ's RFC assessment, or her decision as a whole. Accordingly, she has not shown a basis upon which she can be granted relief.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE